UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LINDA GRANT,

                    Plaintiff,

v.
                                        **DECISION AND ORDER**
                                        12-CV-651S

COUNTY OF ERIE, ERIE COUNTY YOUTH
DETENTION SERVICES,

                    Defendants.

## I. INTRODUCTION

Plaintiff Linda Grant commenced this action in July 2012 asserting causes of action for employment discrimination based on a perceived disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as related retaliation and state law claims. Pending before this Court is Defendants' motion to dismiss for failure to state a claim.[1] For the reasons discussed below, this Court finds the matter fully briefed and oral argument unnecessary, and concludes that Defendants' motion should be granted.

.

---

[1] In support of the Motion to Dismiss (Docket No. 11), Defendants submitted the Attorney Declaration of Alisa A. Lukasiewicz, Esq., with Exs. A-G (Docket No. 12) and a supporting Memorandum of Law. Plaintiff opposed the motion with the Attorney Declaration of Harvey P. Sanders, Esq., with Exs. 1-8, and an opposing Memorandum of Law (Docket No. 16). Defendants filed a reply Memorandum of Law (Docket No. 17) and the reply Attorney Declaration of Lukasiewicz with Ex. A (Docket No. 18).

1

## II. BACKGROUND

Plaintiff was employed by Defendants from 1984 until February 2009, with her most recent position being that of a youth detention worker. (Compl. ¶¶ 7-8, 19.) As alleged in her Complaint, Plaintiff sustained a hand injury in February 2008 while performing a restraint, and she was out of work until November of that year. (Id. ¶¶ 8-9.) She then underwent an examination requested by Defendants' Workers' Compensation Administrator, who cleared her to work without restrictions. (Id. ¶¶ 10-11.) Plaintiff was also cleared to return to work by her hand surgeon at that time. (Id. ¶ 12.) She further alleges that on December 3, 2008, her primary physician cleared her for "light duty . . . but could not suggest job-specific reasonable accommodations because the doctor did not have Plaintiff's job description." (Id. ¶ 13.) As submitted by Defendants, this December 3, 2008 letter from Plaintiff's primary physician indicates that Plaintiff was "still totally temporarily disabled due to her left hand injury." (Decl. of Attorney Alisa A. Lukasiewicz, Ex C, Docket No. 12.)[2]

According to Plaintiff, she asked to return to work, but despite the fact that she had been cleared by two physicians to work without restriction, "Defendants denied that request, stating there was no reasonable accommodation that could be provided." (Id. ¶¶ 16-17.) Plaintiff then alleges that shortly "[t]hereafter, Plaintiff's primary care physician informed Defendants that Plaintiff was temporarily disabled until January 31, 2009," and Plaintiff submitted a "Medical Certification Form as requested by the Erie County Office for

---

[2] As noted below, this Court may consider documents relied on in the Complaint on a motion to dismiss. In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356-357 (S.D.N.Y. 2003), aff'd 396 F.3d 161 (2d Cir. 2005), cert denied 546 U.S. 935 (2005).

the Disabled listing what duties she could perform." (Compl. ¶ 18.) This form is entitled "Physician Medical Certification for Request for Reasonable Accommodation." (Lukasiewicz Decl. Ex. E (February 12, 2009 form).) Her primary physician indicated therein that Plaintiff was unable to make a fist or close her hand, and that she was "[i]ndefinitely" limited in her ability to perform her job duties because she could not lift, grasp, or carry, restrain clients, or "transfer." (Lukasiewicz Decl. Ex. E.) Plaintiff's physician further opined that she could write, file, and answer the telephone. (Id.) Defendants responded to this request by letter dated February 23, 2009, and informed Plaintiff that they could not accommodate her. (Comp. ¶ 18; Lukasiewicz Decl. Ex. F.) It was stated in that letter that, based on the medical information provided "and the duration of your limitations, you are unable to perform the essential functions of your job as a Youth Detention Worker with any reasonable accommodation." (Lukasiewicz Decl. Ex. F.) Plaintiff was terminated from employment on February 24, 2009. (Compl. ¶ 19.)

Plaintiff's primary care physician cleared her to return to work with no restrictions in October 2009, within the one-year period in which she could seek reinstatement pursuant to New York Civil Service Law § 71.[3] (Compl. ¶¶ 20-21; Attorney Declaration of Harvey P. Sanders, Esq., Ex. 5 (preprinted form indicating that Plaintiff was examined on October 8, 2009, and could "return to work/school/day care/physical education" at "full level").)

---

[3]
N.Y. Civil Service Law § 71 provides, as relevant, that:

> Where an employee has been separated from the service by reason of a disability resulting from occupational injury or disease as defined in the work[ers'] compensation law, he or she shall be entitled to a leave of absence for at least one year, unless his or her disability is of such a nature as to permanently incapacitate him or her for the performance of the duties of his or her position.

Plaintiff further alleges:

> At the request of Defendants' third-party Workers' Compensation Administrator[,] an independent physician examined Plaintiff on December 9, 2009 and ruled she could perform the job duties of defending herself and restraining others. Notwithstanding his concession that she could return to work, the physician who examined Plaintiff questioned "whether this is reasonable, at her age."

(Compl. ¶ 22.)

Defendants submitted the report of the independent physician who examined Plaintiff on December 9, 2009. (Lukasiewicz Decl. Ex. G.) This orthopedic surgeon stated, under penalty of perjury, that Plaintiff reported to him that:

> the most demanding part of her work is to have to immobilize unruly youth. These youth can be the size of an adult. Not only does she have to protect herself[ and] the youth, but she also has to be available to do [a] similar function to help her co-workers. She feels she would not be able to do that, that there would be a risk of re-injuring her wrist and hand.

(Lukasiewicz Decl. Ex. G. at 3, 7.) The orthopedic surgeon further indicated that the only question before him was Plaintiff's fitness for duty:

> This is obviously difficult to answer owing to the nature of her work. The most demanding part is to be able to restrain youth that can be large in stature. Purely, a mechanical point of view, from an orthopedic stand point, it is my view that she could return to her regular work, she is right handed; she would be able to defend herself.
>
> Whether this is reasonable, at her age, there are many other factors that need to be included. She is obviously at increased risk of significant injury with any restraint maneuver. That alone, in my opinion, would preclude her from doing that type of work at age 59 with a history of multiple problems with her wrists and hands, and 3 fractures. Thus, **overall it is my opinion that it is not appropriate for her to return . . . to full duty without restriction at the type of work where she would have to restrain physically strong people**. The risk of re-injury, in my opinion, is unduly high. Otherwise, it is my opinion there is very little disability left from the multiple injuries, and that she has overall good function of her right and left upper extremities except for slightly decreased range of motion of the digits

> and wrists on the left, and some weakness.
>
> It is my opinion that the level of disability, to give a reference point, would be best stated at permanent and in between minimal and mild based on this examination.

(Lukasiewicz Decl. Ex. G. at 6 (emphasis added).)

Plaintiff alleges that "[n]otwithstanding this fourth doctor who cleared Plaintiff to return to work, the Office for the Disabled still refused to allow Plaintiff to return to work on February 19, 2010." (Compl. ¶ 24.) By letter dated that date, Plaintiff was informed that, based on the independent medical examination, "and the fact that you are separated from service, it has been determined that a reasonable accommodation is not warranted and your case will be closed." (Sanders Decl. Ex. 7.)

Plaintiff filed a charge with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on July 16, 2010, alleging discrimination based on age and perception of disability. (Compl. ¶ 4, Ex. A.) The EEOC issued a right to sue letter on June 28, 2012. (Id. Ex. B.) Plaintiff commenced the instant action in this Court on July 10, 2012. In her Complaint, she alleges six causes of action: (1) disability discrimination in violation of the ADA; (2) disability discrimination in violation of New York State Human Rights Law ("NYHRL"); (3) retaliation in violation of the ADA; (4) retaliation in violation of NYHRL; (5) age discrimination in violation of the ADEA; and (6) age discrimination in violation of NYHRL.

### III. DISCUSSION

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493

F.3d 87, 98 (2d Cir. 2007).  In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98. This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions.  Iqbal, 556 U.S. at 678.  Further, although " 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination[,]' . . . [it must state] . . . only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)); see Kleehammer v. Monroe County, 743 F. Supp. 2d 175, 183 (W.D.N.Y. 2010)(to survive a motion to dismiss, a discrimination claim must be facially plausible and give fair notice to the defendants of the basis for the claim).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

> Further, in making its determination, a court is entitled to consider, as relevant here:
>
> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356-357 (S.D.N.Y. 2003)(citations omitted), *aff'd* 396 F.3d 161 (2d Cir. 2005), *cert denied* 546 U.S. 935 (2005); see Weiss v. Inc. Vill. of Sag Harbor,  762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

**A.      Timeliness**

"In order to file a federal lawsuit under the ADA or the ADEA, a plaintiff must file a charge of discrimination with the EEOC within three hundred (300) days after the date of the alleged unlawful acts." Liles v. N.Y.C. Dept. of Educ., 516 F. Supp. 2d 297, 309 (S.D.N.Y. 2007); see 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 2000e-5(e)(1); § 12117(a); Harris v. City of N.Y., 186 F.3d 243, 247-48 (2d Cir.1999); see generally McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 214 (2d Cir. 2006) (a right to sue letter enables a private suit only where issued in connection with a timely administrative charge). Here, Defendant argues, and Plaintiff concedes, that Plaintiff's federal age, disability, and retaliation claims based on acts occurring prior to September 19, 2009 must be dismissed. (Def's Mem of Law at 5-6; Pl's Mem of Law in Opp'n at 5-6.) Further, Plaintiff concedes to the dismissal of her claim under the ADEA in its entirety. (Pl's Mem of Law in Opp'n at 5.)

**B.      Discrimination Claims**

A claim for discrimination based on a perceived disability requires a showing that (1) the employer is subject to the ADA; (2) plaintiff was perceived by that employer to be disabled within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of his or her job; and (4) plaintiff suffered an adverse employment action because of the perceived disability. Kinneary v. City of N.Y., 601 F.3d 151, 155-56 (2d Cir. 2010); Giordano v. City of N.Y., 274 F.3d 740, 747-48 (2d Cir. 2001); see Casseus v. Verizon N.Y., Inc., 722 F. Supp. 2d 326, 350 (E.D.N.Y. 2010) (with the exception of the definition of disability, analysis of disability discrimination claims under the NYHRL is identical to ADA analysis). "[T]he term 'essential functions,' which is not defined in the statutes themselves,

is generally defined in ADA regulations promulgated by the Equal Employment Opportunity Commission ('EEOC') to mean the 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.' " Kinneary, 601 F.3d at 156 (internal quotation marks omitted); see Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997).

      Here, Plaintiff asserts that Defendants discriminated against her in violation of the ADA by failing to reinstate her as a youth detention worker based on a misperception of her as disabled.  Plaintiff alleges that this perception was misplaced because she in fact needed no accommodation to perform the essential functions of her job, as evidenced by the October and December 2009 opinions of her treating physician and the orthopedic surgeon who examined her at the request of Defendants' third-party Workers' Compensation Administrator. (Compl. ¶¶ 17, 21-24; Pl's Mem of Law in Opp'n at 12.) The allegations in the Complaint and the documents on which that Complaint relies, however, undermine this claim.  They instead establish a timeline whereby Plaintiff was, in the opinion of her own physician, "totally temporarily disabled" and could not restrain clients as of February 2009. (Lukasiewicz Decl. Exs. C, E; see Compl. ¶¶ 17-18.)  Contrary to Plaintiff's assertion that she did not need and did not request a reasonable accommodation at that time, the "Medical Certification Form" referenced in the Complaint is in fact an express request from her physician for such an accommodation. (Lukasiewicz Decl. Ex. E; see Compl. ¶ 18.)  The letter from Defendants, also referenced in paragraph 18 of the Complaint, indicates that based on the information provided by Plaintiff's physician, Plaintiff was "unable to perform **the essential functions** of [her] job as a Youth Detention Worker with any reasonable accommodation." (Lukasiewicz Decl. Ex. F (emphasis added); see

Compl. ¶ 18.)

Plaintiff asserts that her primary physician cleared her to return to work with no restrictions on October 8, 2009. (Compl. ¶ 21; Sanders Decl. Ex. 5.) Plaintiff was informed thereafter that "an independent physician" would examine her to determine whether she was fit for duty. (Compl. ¶ 22; Sanders Decl. Ex. 6 (October 29, 2009 letter scheduling "Fit for Duty" examination).) Plaintiff, however, misrepresents the conclusion of the orthopedic surgeon who conducted this examination.  In his written opinion, the surgeon acknowledges that from a purely "mechanical point of view," Plaintiff could return to work and defend herself. (Lukasiewicz Decl. Ex. G. at 6.) He goes on to state, however, that "there are many other factors that need to be included" in a determination of fitness for duty, including Plaintiff's "increased risk of significant injury with any restraint maneuver." (Id.) This was based not only on Plaintiff's age, but also her "history of multiple problems with her wrists and hands, and 3 fractures." (Id.)  The surgeon specifically stated that "overall it is [his] opinion that **it is not appropriate for her to return her to full duty without restriction** at the type of work where she would have to restrain physically strong people." (Id. (emphasis added).)  Notably, this conclusion was reached in part on the history provided by Plaintiff, which included her statement that she did not feel she would be able to perform her duties of immobilizing unruly youth in order to protect herself, the youth, and her co-workers. (Id., at 3, 6.) Plaintiff's claim that Defendants failed to reinstate her despite "this fourth doctor who cleared Plaintiff to return to work" (Compl. ¶ 24) is therefore contradicted by the documents on which the Complaint relies. Perry v. NYSARC, Inc., 424 Fed. Appx. 23, 25 (2d Cir. 2011) (narrow exception to rule that a court must

accept all factual assertions in the complaint as true where, among other things, those assertions are contradicted by the complaint itself, documents on which the complaint relies, and facts of which a court may take judicial notice).

In light of this, it cannot be concluded that Plaintiff stated a facially plausible claim for disability discrimination under the ADA or NYHRL where the Complaint and the documents on which it relies establish that Defendants did not reinstate Plaintiff following the determination of "an independent physician" (Compl. ¶ 22) that Plaintiff could not perform the essential functions of her job. Because Plaintiff relies solely on her argument that she was fully qualified to perform her job as a youth detention worker,[4] (Compl. ¶¶ 17; Pl's Mem of Law in Opp'n at 12), there are no allegations to support an inference that Plaintiff could have been reinstated to her old position with a reasonable accommodation or that a vacancy elsewhere existed into which she could have been transferred in February 2010. See Jackan v. N.Y. S. Dep't of Labor, 205 F.3d 562, 566-67 (2d Cir. 2000) (plaintiff bears the burden of establishing that a reasonable accommodation or appropriate vacancy exists), *cert denied*, 531 U.S. 931 (2000).

Further, because violations of the ADEA and NYHRL based on age discrimination also require a showing that Plaintiff was qualified for the position, these discrimination claims must be dismissed as well. See Gorzynski v. JetBlue Airways Cor., 596 F.3d 93, 107 (2d Cir. 2010); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (applying the same analysis to age discrimination claims under the ADEA and NYHRL),

---

[4] Plaintiff alleged, and the EEOC apparently found, that Defendants had an improper policy of not returning current or former youth detention workers to their jobs unless they could perform all duties without medical restrictions. (Compl. ¶ 15; Sanders Decl. Ex. 8.) This policy is irrelevant to the instant case in light of Plaintiff's limited argument that she was *not* disabled and neither requested nor needed any accommodation.

*cert denied*, 534 U.S. 993 (2001).

Finally, although not addressed by the parties, there is no indication in the Complaint that Plaintiff complied with the notice of claim requirements for the NYHRL claims against the Defendant County. "The failure to timely serve a notice of claim pursuant to County Law § 52 in an action against a county to recover damages based on the Human Rights Law is fatal unless the action has been brought to vindicate a public interest or leave to serve a late notice of claim has been granted." Picciano v. Nassau County Civil Service Com'n, 290 A.D.2d 164, 169 (N.Y.A.D. 2d Dep't 2001); see Bielski v. Green, 674 F. Supp. 2d 414, 427 (W.D.N.Y. 2009). "Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." Dingle v. City of N.Y., 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010). In any event, Plaintiff cannot state a claim of discrimination under NYHRL for alleged adverse employment actions taken before September 19, 2009. Plaintiff's own primary physician opined that Plaintiff was temporarily disabled from restraining clients prior to that date. (Lukasiewicz Decl. Ex. E; Compl. ¶ 18.)

**C.    Retaliation Claims**

Both the ADA and NYHRL make it unlawful for an employer to discriminate against an employee for opposing any practice made unlawful by these statutory schemes. See 42 U.S.C. § 12203(a); N.Y. Exec. Law 296(7). In order to establish a retaliation claim under either statutory scheme, Plaintiff must show that (1) she engaged in a protected activity; (2) Defendants were aware of this activity; (3) Defendants took an adverse employment action against her; and (4) there is a causal connection between the adverse

employment action and the protected activity. Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000); Sharpe v. MCI Comm. Servs., Inc., 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010) (burden is on employee to clarify to employer that complaint is based on unfair treatment due to membership in protected class). "[A]n undisclosed belief of [discriminatory] treatment will not convert an ordinary employment complaint into a protected activity." Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d 289, 309 (S.D.N.Y. 2009). Plaintiff has not alleged that she complained of discrimination based on disability prior to filing a discrimination charge with the EEOC on July 16, 2010; indeed, she denies she ever even requested an accommodation. (Compl. ¶¶ 17; Pl's Mem of Law in Opp'n at 12.) She therefore cannot establish that Defendants' refusal to reinstate her in or prior to February 2010 was a result of unlawful retaliation. See Foster v. Humane Society of Rochester and Monroe County, Inc., 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (engaging in a protected activity requires a plaintiff to oppose statutorily prohibited discrimination, not simply complain about unrelated work problems).

## IV. CONCLUSION

For the reasons stated above, Plaintiff has failed to state a plausible claim for discrimination under either the ADA, the ADEA, or NYHRL law. Defendants' motion to dismiss the complaint is therefore granted.

## V. ORDERS

IT HEREBY IS ORDERED that Defendants' Motion to Dismiss (Docket No. 11) is

GRANTED and the Complaint is dismissed;

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: December 31, 2012
       Buffalo, New York

                                                          /s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                         Chief Judge
                                               United States District Judge